UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DENISE M. MULLINS, | ) |
| | ) No. CV-05-287-CI |
| Plaintiff, | ) |
| | ) ORDER GRANTING IN PART |
| v. | ) PLAINTIFF'S MOTION FOR SUMMARY |
| | ) JUDGMENT AND REMANDING FOR |
| JO ANNE B. BARNHART, | ) ADDITIONAL PROCEEDINGS |
| Commissioner of Social | ) PURSUANT TO SENTENCE FOUR OF |
| Security, | ) 42 U.S.C. § 405(g) |
| | ) |
| Defendant. | ) |
| | ) |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 13, 17) submitted for disposition without oral argument on April 10, 2006. Attorney Kenneth L. Isserlis represents Plaintiff; Special Assistant United States Attorney Thomas M. Elsberry represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 6.) After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment and **REMANDS** for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Plaintiff, 45-years-old at the time of the initial administrative hearing, completed high school and had past work experience as a fast food cashier, hostess, and counter/deli worker.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 1

1  Plaintiff protectively filed an application for Supplemental
2  Security Income (SSI) benefits on December 2, 2002,[1] alleging
3  disability as of November 2, 2002 (as amended at the hearing), due
4  to epilepsy, stress, and fatigue secondary to medications. (Tr. at
5  96, 247.) Following a denial of benefits at the initial stage and on
6  reconsideration, a hearing was held before Administrative Law Judge
7  R. J. Payne (ALJ). In January 2004, the ALJ dismissed the case for
8  untimely filing (Tr. at 33), but the application was remanded by the
9  Appeals Council after it found good cause for the untimely filing.
10  On March 31, 2005, the ALJ denied benefits; review was denied by the
11  Appeals Council.  This appeal followed.  Jurisdiction is proper
12  under 42 U.S.C. § 405(g).

13                        **ADMINISTRATIVE DECISION**

14      The ALJ concluded Plaintiff had not engaged in substantial
15  gainful activity and suffered from severe impairments including
16  epilepsy and hypothyroidism, but those impairments did not meet the

17  ──────────────────────────

18      [1]Plaintiff previously filed applications for SSI benefits in
    May 1993 and April 1994.  Benefits were awarded based on the April
19  application alleging epilepsy and Plaintiff continued to receive
20  them until she married her current spouse who was employed. (Tr. at
21  281, 282.)  Benefits were terminated after Plaintiff failed to
22  appear before the agency to clarify receipt of unreported income
23  which resulted in an overpayment.  An outstanding overpayment
24  balance remains and that issue is not challenged here. (Tr. at 18,
25  19.)  There is also an indication Plaintiff filed an application for
26  benefits mid-2001; the denial of benefits at that time was not
27  appealed. (Tr. at 248.)
28  ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
    REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42
    U.S.C. § 405(g) - 2

1    Listings.  (Tr. at 22.)   He found Plaintiff's testimony was not
2    fully credible.  The ALJ concluded Plaintiff had a residual capacity
3    for a full range of work with additional limitations, including only
4    occasional climbing and avoiding concentrated exposure to hazards
5    (such as machinery, heights).  (Tr. at 24.)   The ALJ concluded
6    Plaintiff could perform her past relevant work as a fast food
7    cashier and hostess.  Alternatively, the ALJ concluded Plaintiff
8    would not be disabled under the Grids.

9                                **ISSUES**

10        The  question  presented  is  whether  there  was  substantial
11   evidence to support the ALJ's decision denying benefits and, if so,
12   whether  that  decision  was  based  on  proper  legal  standards.
13   Plaintiff contends the ALJ erred when he erroneously (1) rejected
14   the opinion of the treating physician; (2) relied on the opinion of
15   the  consulting  physician;  (3)  rejected  her  testimony  based  on  a
16   history  of  lack  of  access  to  medical  care  because  of  financial
17   reasons  and  her  daily  activities;  (4)  rejected  the  statements  of
18   Plaintiff's witnesses; (5) determined Plaintiff's residual capacity;
19   (6)  concluded  Plaintiff  could  perform  her  past  relevant  work;  and
20   (7)  applied  the  Grids  to  determine  Plaintiff  was  not  disabled  at
21   step five.

22                         **STANDARD OF REVIEW**

23        In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the
24   court set out the standard of review:

25        The decision of the Commissioner may be reversed only if
         it is not supported by substantial evidence or if it is
26        based on legal error. *Tackett v. Apfel*, 180 F.3d 1094,
         1097 (9th Cir. 1999). Substantial evidence is defined as
27        being more than a mere scintilla, but less than a
         preponderance. *Id.* at 1098. Put another way, substantial
28

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42
U.S.C. § 405(g) - 3

evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

**SEQUENTIAL PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and

1    detailed objective medical reports of h[is] condition from
2    licensed medical professionals." *Id*. (citing 20 C.F.R. §§
     404.1512(a)-(b), 404.1513(d)).

3                                **ANALYSIS**

4    1.    <u>Treating and Consulting Physicians' Opinions</u>

5          Plaintiff contends the ALJ erroneously relied on the opinion of

6    the consulting physician without "clear and convincing" reasons to

7    reject the opinion of the treating physician, Dr. Schuerman.    She

8    notes Dr. Schuerman treated Plaintiff for ten years.    Based on that

9    treatment history, Dr. Schuerman opined it was not unreasonable to

10   assume Plaintiff would be unable to perform sedentary or light work

11   on a consistent 40-hour per week basis.    (Tr. at 219-20.)

12   Additionally, Plaintiff contends medications needed to control

13   seizures contributed to her level of fatigue.    Defendant argues Dr.

14   Schuerman's opinion was rejected with specific and legitimate

15   reasons and the consulting expert's opinion was supported by other

16   evidence in the record.

17         In a disability proceeding, the treating physician's opinion is

18   given special weight because of his familiarity with the claimant

19   and his physical condition. *See Fair v. Bowen*, 885 F.2d 597, 604-05

20   (9th Cir. 1989).    If the treating physician's opinions are not

21   contradicted, they can be rejected only with "clear and convincing"

22   reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If

23   contradicted, the ALJ may reject the opinion if he states specific,

24   legitimate reasons that are supported by substantial evidence. *See*

25   *Flaten v. Secretary of Health and Human Serv*., 44 F.3d 1453, 1463

26   (9th Cir. 1995); *Fair*, 885 F.2d at 605.    While a treating

27   physician's uncontradicted medical opinion will not receive

28

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42
U.S.C. § 405(g) - 5

"controlling weight" unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," Social Security Ruling 96-2p, it can nonetheless be rejected only for "'clear and convincing' reasons supported by substantial evidence in the record." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Furthermore, a treating physician's opinion "on the ultimate issue of disability" must itself be credited if uncontroverted and supported by medically accepted diagnostic techniques unless it is rejected with clear and convincing reasons. *Holohan*, 246 F.3d at 1202-03.  Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support as with a doctor's report based substantially on a claimant's subjective complaints of pain; as specific, legitimate reasons for disregarding the treating physician's opinion.  *See Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d at 604.  There is no contradiction as to the diagnoses of hypothyroidism and epilepsy; the difference of opinion relates only to residual capacity.   Dr. Schuerman opined Plaintiff was disabled; Dr. Rodkey, the consulting physician, opined she was not.

The ALJ noted with respect to Dr. Schuerman's opinion as to full disability:

> A statement by a medical source that a claimant is "disabled" or "unable to work" does not mean that the Administration will determine that a claimant is disabled. In this regard, the undersigned notes that Dr. Schuerman's records are not consistent with her statements made at Exhibit 6F, pp. 4-8. She indicated that she had only seen the claimant twice between December 2002 and December of 2003 and in April of 2003, Dr. Schuerman reported that the

claimant had remained seizure free and in fact, the
claimant did not return to Dr. Schuerman until October of
2004.  The undersigned notes that Dr. Schuerman opined the
claimant was unable to maintain employment on a full-time
basis; however, did not articulate as to why she could
not, other than to say it was reasonable based on her
diagnoses.  The undersigned also notes a February 10,
2005, letter by Dr. Schuerman indicated that the reason
the claimant was not compliant with her medications was
due to the side effects, which, included fatigue,
drowsiness, dry mouth, decreased libido and decreased
memory.  However, the undersigned notes that other than
the fatigue, her office notes do not reflect the claimant
was experiencing these side effects.  She again indicated
that the claimant was unable to sustain employment due to
her seizure disorder.  The undersigned also notes that Dr.
Schuerman's office records show that the claimant's
epilepsy was stable.  If, as she indicates in the
interrogatories and her February 10 letter, the claimant's
condition is not controlled, why has she not been referred
to a neurologist for further evaluation.  The undersigned
also notes that Dr. Schuerman indicated that the claimant
was not compliant with her medications because of the side
effects; however, the records demonstrate that the
claimant was simply not taking the correct dosage.
Records consistently show that when she is taking her
medications properly, she remains seizure free.  The
undersigned finds that her opinions regarding disability
are generally conclusory, brief and unsupported by the
record as a whole.

(Tr. at 24, 25 (reference to citation omitted).)  The ALJ's findings

are specific and legitimate and supported by the record.  Although

Dr. Schuerman concluded in two letters Plaintiff was disabled (Tr.

at 217-219 and 231), her clinic notes do not support that

conclusion.  In March 2000, Dr. Schuerman examined Plaintiff, noted

her symptoms were under "good" control and Plaintiff did not

remember when her last seizure had occurred.  (Tr. at 179.)  In June

and November 2001, Dr. Schuerman noted Plaintiff was stable with

medications.  (Tr. at 182, 184, 187.)  In January 2003, Dr.

Schuerman noted Plaintiff was having difficulty sleeping, but she

had no other problems.  (Tr. at 203.)  In April 2003, Dr. Schuerman

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42
U.S.C. § 405(g) - 7

increased Plaintiff's medication, noting she had been seizure free for about one year, but occasional petit mal seizures were re-occurring. (Tr. at 204.) In October 2004, Dr. Schuerman noted Plaintiff had not suffered from grand mal seizures during the last year and had had a couple of petit mal seizures. Plaintiff was noted to be doing well. (Tr. at 223.)

After the administrative hearing, Dr. Schuerman's conclusion regarding disability in February 2005 was equivocal; she stated full time employment "does not appear" to be an option. No reasons supported by clinical notes were given to support that conclusion. (Tr. at 231.) She noted complaints of fatigue, drowsiness, dry mouth, decreased libido and loss of memory, but those complaints do not appear in clinic notes. Dr. Schuerman's opinion provided on December 19, 2003, also was equivocal. Dr. Schuerman noted initially Plaintiff was unable to provide an opinion as to residual capacity because she had examined Plaintiff only twice. (Tr. at 219.) She then stated "[i]t was reasonable to assume" based only on the diagnoses of epilepsy and hypothroidism, that Plaintiff would be unable to perform light or sedentary work. (Tr. at 219-220.) Thus, the ALJ's reasons for rejecting Dr. Schuerman's opinion as to disability were specific, legitimate and supported by the record.

Plaintiff next argues the ALJ improperly relied on the opinion of the consulting physician, Dr. George Rodkey, who testified at the hearing. Plaintiff argues Dr. Rodkey acknowledged a person suffering from epileptic seizures can experience them at unpredictable times and that the resulting fatigue, particularly following grand mal seizures, can interfere with the ability to

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 8

function. (Tr. at 259, 260, 264.) Defendant notes Dr. Rodkey correctly testified Plaintiff did not meet the Listings and that the only limits she would experience would be those related to safety procedures because of her seizure history. (Tr. at 253.)

The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990). Cases have upheld rejection of an examining or treating physician based in part on the testimony of a non-examining medical advisor; but those opinions also have included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, at 831, citing *Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Andrews*, 53 F.3d at 1043 (conflict with opinions of five non-examining mental health professionals, testimony of claimant and medical reports); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician, but also substantial

evidence (more than a mere scintilla, but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

Dr. Rodkey's opinion is consistent with Dr. Schuerman's clinical notes which indicate consistently good control when medications were taken as prescribed, and with the opinion of consulting physician, Dr. Staley, in September 2003. Dr. Staley noted there were no physical limitations (Tr. at 207) and only a limitation with respect to hazardous machinery. (Tr. at 210.) It also is consistent with Plaintiff's report of daily activities that she prepares all the family meals, provides child care, sweeps and mops, washes dishes and does all the laundry on a daily basis. (Tr. at 118, 119, 276.) She handles the family finances, crochets for an hour at a time, works on puzzles and reads on a daily basis. She stated the only thing she could not do was drive to work. (Tr. at 120.) Thus, Dr. Rodkey's opinion is consistent with other evidence in the record. Moreover, the ultimate issue of disability is a decision left to the ALJ. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

2.  <u>Credibility</u>

Plaintiff contends the ALJ improperly rejected her testimony as not credible based on conclusions that were not supported by facts in the record. She notes the ALJ improperly concluded she had access to publicly funded medical care without evidentiary support and overstated her daily activities. She relies on SSR 96-7p, which prohibits the ALJ from drawing any inference from a claimant's

failure to seek or pursue treatment without first considering the claimant's explanation. With respect to daily activities, Plaintiff performing household chores is not inconsistent with disability in light of the daily naps Plaintiff must take. Defendant argues the credibility determination was properly made and supported by the record.

In deciding whether to admit a claimant's subjective symptom testimony, the ALJ must engage in a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step, see *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986), the claimant must produce objective medical evidence of underlying "impairment," and must show that the impairment, or a combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Id.* at 1281-82. If this test is satisfied, and if there is no evidence of malingering, then the ALJ, under the second step, may reject the claimant's testimony about severity of symptoms with "specific findings stating clear and convincing reasons for doing so." *Id.* at 1284. The ALJ may consider the following factors when weighing the claimant's credibility: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his/her] testimony and [his/her] conduct, [claimant's] daily activities, [his/her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan v.*

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 11

*Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  If a reason given by the ALJ is not supported by the evidence, the ALJ's decision may be supported under a harmless error standard. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (applying the harmless error standard); *Booz v. Sec'y of Health and Human Serv.*, 734 F.2d 1378, 1380 (9th Cir. 1984) (same).  Here, there is no evidence of malingering; thus, the reasons for rejecting Plaintiff's testimony must be clear and convincing.

The ALJ noted in his opinion:

[The medical record] demonstrates that her seizures remain under good control when taking her medications correctly. As outlined here, Dr. Schuerman's records show that the claimant had a couple of absent type seizures between June 2001 and October of 2002.  It is noteworthy, that the claimant began reporting increased seizure activity at the time she filed for benefits (December 2002); yet, Dr. Schuerman's notes from December 2002 through April of 2003, show that seizure disorder was not brought up and in fact, the claimant reported in April of 2003 that she had not had any seizure in the last year.  When evaluating Dr. Schuerman's records it appears that between June 2001 and April of 2003, the claimant remained seizure free other than a couple of absent type seizures from June of 2001 to November of 2001.  This is contrary to statements she made to the Administration wherein at Exhibit 5E she indicated that she was having three or more seizures per month, see also Exhibits 9E and 10E covering the period from February to August 2003.  She indicated that this was partially due to not taking her medications but then reported that her medications cause sleepiness/grogginess.  It is also noteworthy that she also reported that she prepares all the family meals, sweeps and mops, washes dishes and does all the laundry - every day.  This is not consistent with total disability. The undersigned also notes that the claimant reported memory problems and having difficulty remaining on task.  Yet, she handles all the finances, can crochet for an hour at a time, works on puzzles and reads on a daily basis.  She even stated that the only thing she could not do because of her illness was drive to work (Exhibit 4E).  Additionally, between May of 2003 and November of 2003, the claimant reported an increase in seizure activity, memory problems, sleep problems and fatigue.  She further indicated that she could no longer do any household chores.  If this were the case, it is not consistent with the medical records that show she did not

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 12

receive any medical care between April 2003 and October of 2004. The undersigned does note that she had symptoms of heat intolerance, irregular menstrual cycles, problems sleeping, and hair and skin changes, but that these were related to her diagnosis of hypothyroidism. For all the aforementioned reasons, the undersigned finds that the claimant is not credible. As the claimant is not credible, his [sic] statements concerning his [sic] pain, his [sic] symptoms, and his [sic] limitations are not persuasive.

(Tr. at 23.)

Plaintiff stated the only reason she was unable to work was due to her epilepsy and fatigue secondary to that condition. She stated she needs to nap daily for two hours. She also stated she had no problem walking, standing, sitting, lifting or sleeping at night (10 hours). (Tr. at 267, 275.) Plaintiff testified she has not had health insurance since January 2001[2] and she has been unable to schedule an examination with a doctor or purchase medication. (Tr. at 280, 284.) Medical records indicate Plaintiff used the emergency room once in November and twice December 2002 and those bills were submitted to Medicaid. (Tr. at 166-173.) Plaintiff also was referred to and examined by Dr. Cathcart, D.O., for hypothyroidism in March 2003. (Tr. at 175.) She also had a pap smear in November 2002 (Tr. at 192) and a thyroid ultrasound and scan in November and December 2002. (Tr. at 194, 199.) Plaintiff consulted Dr. Schuerman on January 16, 2003 (Tr. at 203), April 25, 2003 (Tr. at 204). Plaintiff was referred for financial billing arrangements in October 2004. (Tr. at 222.) Although she stated she could not afford to be examined, an examination and blood tests took place.

_____

[2] Plaintiff indicated on her application dated November 2002 that she had a medical assistance card. (Tr. at 95.)

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 13

(Tr. at 223.) Thus, it does not appear Plaintiff's financial condition prohibited her from obtaining health care, other than dental work necessary due to a lack of "brushing or flossing." (Tr. at 223.)

Plaintiff also contends her daily activities were inconsistent with disability. Plaintiff stated she had no limitations other than fatigue associated with the occurrence of seizures and secondary to seizure medication. That fatigue required her to nap daily for up to two hours. The medical record does not reflect references to fatigue other than a recommendation by Dr. Schuerman that Plaintiff, because of her thyroid condition, take a "brief nap just after noon" instead of sleeping during the day. (Tr. at 203.) Dr. Staley noted Plaintiff's complaints about her epilepsy medications were inconsistent with prior history of no side effects associated with those medications. (Tr. at 211.) He also noted the fatigue may be associated with hypothyroidism and was considered a temporary finding. (Tr. at 211.) Thus, the ALJ's reasons were clear and convincing and supported by the record.

3.   Statements of Witnesses

Plaintiff contends the ALJ improperly rejected the statements of her witnesses, her daughter and spouse because of the "possibility that their statements were influenced by their desire to help the claimant." (Tr. at 24.)

The ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Moreover, pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 14

1993), an ALJ is obligated to give reasons germane to a lay witness's testimony before discounting it. Lay testimony can never establish disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). It is appropriate to discount lay testimony if it conflicts with medical evidence. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Here, the ALJ noted not only the possibility of bias of the family members, but also the fact their statements were inconsistent with the medical evidence. He further noted:

> For example, Mr. Mullins indicated that since June 2001 she has had seizures every couple of days; however, the medical evidence shows that other than a couple of absent seizures between June 2001 and November 2001, she remained seizure free. He stated that he and the others must do all the household chores, but the daughters did not mention this in their statements and it is contrary to the claimant's statements that she does everything.

(Tr. at 24.) Even recognizing case law which holds the statement of a lay witness cannot be rejected simply because of the potential for bias, *Regenniter v. Commissioner*, 166 F.3d 1294, 1298 (9th Cir. 1999), the fact a statement by a witness is rejected also because it is not supported by the medical evidence or other evidence of record is an acceptable reason. *Vincent*, 739 F.2d at 1395. The ALJ did not err.

4.   <u>Residual Capacity</u>

Plaintiff asserts the ALJ's conclusion she was capable of performing work at all exertional levels was error. She notes she is five feet tall and weighs 140 pounds and would be physically incapable of performing heavy work which requires frequent lifting and carrying of objects weighing 50 pounds or more. Plaintiff also

contends the ALJ erred when he concluded she was capable of performing past relevant work as a fast food cashier and hostess. (Tr. at 25-26.) Plaintiff asserts that work did not last more than two months and under administration regulations (SSR 84-25), would be considered an unsuccessful work attempt. Moreover, he failed to investigate the demands of that past work as required under SSR 82-61 and 82-62. Finally, Plaintiff argues the ALJ erred when he relied on the Grids (section 204) at step five to conclude Plaintiff would not be disabled. Defendant responds the ALJ did not err, as Plaintiff fully described her past relevant work and the nonexertional impairments, occasional climbing and avoiding hazards, did not significantly erode the job base.

A claimant is deemed capable of performing her past relevant work if she is capable of returning to her past job or if she is capable of returning to her former type of work. *Villa v. Heckler*, 797 F.2d 794, 798-99 (9th Cir. 1986). At step four, the ALJ must examine the claimant's "residual functional capacity and the physical and mental demands" of the claimant's past relevant work, 20 C.F.R. § 404.1520(e). Disability is not appropriate if the claimant can perform either (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001). Although the burden of proof is on the claimant at step four, the ALJ still has the duty to make the requisite factual findings to support his conclusion. SSR 82-62 (1982).

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 16

Regulations require the ALJ undertake a "function-by-function" analysis of the claimant's capacity to work according to exertional categories.  The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. § 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light medium, heavy, and very heavy. SSR 96-8p (July 2, 1996).

The ALJ concluded Plaintiff had past relevant work as a fast food cashier (unskilled, light work), hostess (skilled, light work), and counter/deli worker (unskilled, light work).  (Tr. at 25.)  He eliminated past work as a deli worker because she would be around hazardous machinery.  (Tr. at 25.) He concluded Plaintiff could return to her past work as fast food cashier and hostess as performed by her and in the national economy.  (Tr. at 26.)

Plaintiff testified she was a hostess at the International House of Pancakes in 2001, earning $1,403.90, averaging at the least $375 per month.  (Tr. at 89, 270.)  She also testified she held that job for three or four months, received one quarter of coverage, and quit because of stress.  (Tr. at 89, 270-71.)  Pursuant to 20 C.F.R. § 404.1574(b)(3), Table 2, that amount is presumed to be less than substantial gainful activity (SGA).  A job is considered past relevant work only if it involved "substantial gainful activity." 20 C.F.R. § 404.1565(a); *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001).

Plaintiff also testified she worked at MacDonalds as a cashier

for six months in 1995 and 1996, quitting that job because she was fatigued and stressed. (Tr. at 272.) Earnings at MacDonalds totaled $3,800, averaging more than $500 per quarter, giving her five quarters of coverage in 1995 and 1996, and meeting the guidelines for SGA under 20 C.F.R. § 404.1574(b), Table 1. (Tr. at 88-89.) Thus, the ALJ did not err in considering this work as past relevant work.

However, there is no evidentiary basis from which the ALJ could analyze the tasks involved in that job. Plaintiff did not provide a detailed description of what this work entailed; she testified only that she was a cashier. (Tr. at 272.) There is no other description of the job tasks in the administrative materials. (Tr. at 110.) A legally sufficient analysis must include an investigation of specific job duties--for example, whether it required speed, precision, motor skills, arithmetic skills, or an ability to work with the public. The lack of such an assessment makes it impossible to undertake "a comparison between the claimant's capabilities . . . and the requirements of relevant occupations," SSR 86-8, and is at odds with the requirement that the ALJ provide a "precise description of the particular job duties" likely to cause problems for a claimant. See SSR 82-62. Thus, based on this record, the ALJ erred in concluding Plaintiff could return to her past relevant work.

5. <u>Step Five</u>

Alternatively, the ALJ relied on the Grids as a framework for decision making to conclude Plaintiff was not disabled, specifically 20 C.F.R. Pt. 404, Subpt. P, App. 2, Section 204. That section

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 18

refers to a maximum sustained work capability of heavy or very heavy work, for work involving all skill levels. Additionally, that section provides: "Individuals who retain the functional capacity to perform heavy work (or very heavy work) ordinarily will not have a severe impairment or will be able to do their past work – either of which would have already provided a basis for a decision of 'not disabled.'" Defendant argues the application was correct because Plaintiff was not limited by any physical restrictions.

The Commissioner bears the burden of proof at step five to establish that a claimant is able to make an adjustment to other work, and hence is not disabled. 20 C.F.R. § 404.1520 (1)(4)(v). To make this decision, consideration is given to the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). There is no affirmative showing Plaintiff has the ability to perform heavy or more than heavy work; rather, the ALJ is relying on the absence of physical restrictions noted by Dr. Schuerman in her clinical notes, as adopted by the consulting physicians. The inferences from the evidence, Plaintiff's stature and past work history, suggest no ability to perform heavy work. Thus, the ALJ's reliance on section 204 was error. Accordingly,

**IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment (**Ct. Rec. 13**) is **GRANTED IN PART;** the matter is **REMANDED** for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g). The ALJ shall re-analyze the evidence at steps four and five.

2.    Defendant's Motion for Summary Judgment (**Ct. Rec. 17**) is **DENIED.**

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 19

1          3.    Any application for attorney fees shall be by separate

2   motion.

3          4.    The District Court Executive is directed to file this

4   Order and provide a copy to counsel for Plaintiff and Defendant.

5   Judgment shall be entered for Plaintiff and the file shall be

6   **CLOSED.**

7          DATED April 24, 2006.

8

9                    _____S/ CYNTHIA IMBROGNO_____
                       UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42
U.S.C. § 405(g) - 20